UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANA GIBSON,

                            Plaintiff,

                                                    9:13-CV-00503
v.                                                  (GLS/TWD)

C. ROSATI; D. MAGUIRE; P. MCNALLY; R. LOWRY;
P. LAROSE; S. DELONG; S. SHATTUCK;
J. JOHNSTON; JOHN KITCHNER; THERESA A.
KNAPP-DAVID; J. SCROGGY; WILLIE J. TABB,
JR.; VERNON FONDA; DELUCCIA; BIRRELL; C.
BURNELLE;[1] JOHN DOE; ALBERT PRACK; DONALD
UHLER,

                            Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

DANA GIBSON, 05-A-3824
Plaintiff pro se
Wende Correctional Facility
P.O. Box 1187
Alden, NY 12524

HON. ERIC T. SCHNEIDERMAN                           LAURA SPRAGUE, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

       This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief

---

       [1]       The parties differ on the spelling of Defendant Burnelle's name. This Court will
use the spelling in Defendants' submitted documents. (Dkt. No. 47-1.)

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Dana Gibson alleges that he was subject to mistreatment by nineteen employees of the New York Department of Corrections and Community Supervision ("DOCCS") between 2011 and 2013. (Dkt. No. 7.) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to sever pursuant to Federal Rule of Civil Procedure 21. (Dkt. No. 47.) For the reasons that follow, I recommend that Defendants' motions be denied.

I.      BACKGROUND

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under this Court's broad discretion in deciding motions to sever, *see New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir.1988), these facts are also considered for the pending motion to sever.

In May 2011, while incarcerated at Upstate Correctional Facility ("Upstate"), Plaintiff wrote a letter requesting separation from staff at the Great Meadow Correctional Facility ("Great Meadow"), in response to threats of retaliation by Great Meadow staff for prior civil rights litigation. (Dkt. No. 7 ¶ 21.) This request was denied, first by Defendant Tabb, then by Defendant Knapp-David. *Id.* ¶¶ 21-22. In July 2011, the Prisoners' Rights Project sent a letter to Defendant Fonda, but he "refused to take any action." *Id.* ¶ 23. In October of that year, Plaintiff was transferred from Upstate to Great Meadow, where the threatened retaliation later occurred. *Id.* ¶ 24.

On February 10, 2013, Defendant Burnelle called Plaintiff to the Sergeant's Stand in the

recreation yard, where Defendants Maguire and Burnelle threatened to harm Plaintiff for previous litigation against the Defendants' friends. (Dkt. No. 7 ¶¶ 12-13.) When Plaintiff attempted to walk away, Defendant Rosati placed him in a choke hold and told him that the officers could kill him. *Id*. ¶ 13. Defendant Rosati then forced Plaintiff to the ground, where Defendants Rosati, Maguire, Burnelle, LaRose, Delong, and Shattuck repeatedly kicked him. *Id*. ¶¶ 13-14. Defendant McNally watched and did not intervene, and Defendant Maguire said, "This is what you get for taking us to court." *Id*. ¶ 14. Defendants Maguire and Shattuck handcuffed and chained Plaintiff, and the other officers resumed punching and kicking him for approximately fifteen minutes. *Id*. Defendants Maguire and Rosati concluded by again threatening Plaintiff, and Defendant Maguire warned him not to try to report the events or the officers would "see [his] ass again." *Id*. Defendants Maguire and Burnelle then submitted misbehavior reports which alleged various misbehavior on the part of Plaintiff, including attempted assault and "threats." *Id*. ¶ 35.

On February 20, 2013, once Plaintiff had reported the events of February 10, 2013, Defendants Kitchner, Lowry, and Johnston confronted Plaintiff in his cell, reminded him that Defendant Maguire had warned him not to report the previous assault, and proceeded to "forcefully punch Plaintiff about his upper body and right rib area . . . [for] ten to twenty minutes." (Dkt. No. 7 ¶¶ 17-18.) Defendant Johnston submitted a false misbehavior report alleging (amongst other things) assault, attempted assault, and "violent conduct." *Id*. ¶ 48.

Correctional staff conducted two disciplinary hearings in connection with the two misbehavior reports. (Dkt. No. 7 ¶¶ 30, 50.) The two hearings were initiated on March 14, 2013, and then both were adjourned until March 22, 2013. *Id*. ¶¶ 38-43, 50-53. Plaintiff alleges

3

various misconduct in relation to these hearings.

First, Defendants DeLuccia and Scroggy provided inadequate pre-hearing assistance to Plaintiff during their meetings on March 11, 2013, and March 13, 2013, respectively. (Dkt. No. 7 ¶¶ 35-37, 48-49.) Both Defendants refused all requests for documentation, which Plaintiff sought in order to prepare his defenses. *Id*. ¶¶ 37 ,49. On March 14, 2013, Plaintiff requested the documents from Defendant Birrell, the officer presiding at both hearings, but Defendant Birrell only partially granted these requests, and refused to give Plaintiff the Unusual Incident Reports or most of the portions of the Use of Force reports. *Id*. ¶¶ 39, 51.

On March 22, 2013, Defendant Birrell reconvened the proceedings, and took testimony from Defendant Doe, a mental health clinician with access to Plaintiff's mental health records. (Dkt. No. 7 ¶ 31.) Defendant Doe disclosed to Defendant Birrell confidential information regarding Plaintiff's "psychiatric health state, care, disorder and treatment." *Id*. Defendant Birrell then considered this information at the hearings. *Id*. ¶ 32.

At the hearing concerning the February 10, 2013, events, Plaintiff tried to call for an eyewitness, Inmate Lopez, to contradict the misbehavior reports. (Dkt. No. 7 ¶ 41.) Defendant Birrel ruled that Inmate Lopez's testimony would be relevant and not cumulative, granted Plaintiff's request for the testimony, and adjourned the hearing to locate Inmate Lopez. *Id*. An unknown corrections officer reported to Defendant Birrell that Inmate Lopez had stated that he would not testify because, on February 10, 2013, he was being transferred, and was therefore not at Great Meadow to witness the events. *Id*. ¶ 42. Plaintiff then pointed out to Defendant Birrell that this was not possible, because February 10, 2013, was a Sunday, and prisoners are not transported on Sundays. *Id*. ¶. Nevertheless, Defendant Birrell refused to make a further inquiry.

4

*Id.*

Plaintiff was found guilty of all charges in both misbehavior reports. (Dkt. No. 7 ¶¶ 43, 53.) Plaintiff appealed both decisions that same day. *Id.* ¶¶ 44, 54. Defendant Prack reviewed the appeal in May 2013, and reduced Plaintiff's sentence for the events of February 10, 2013. *Id.* ¶¶ 45, 55. He did not remedy the disposition of guilt in either case, which Plaintiff contends was rendered in violation of his due process rights. *Id.*

While Plaintiff was serving his punishment in the Special Housing Unit ("SHU"), Defendant Uhler subjected Plaintiff to increasingly restrictive restraint orders with indefinite duration. (Dkt. No. 7 ¶¶ 26-28.) Defendant Uhler first placed Plaintiff on a Retention Strap Order, citing an event in which Plaintiff attempted to pull mechanical restraints into his cell. *Id.* ¶ 26. Plaintiff claims this event never occurred. *Id.* When Plaintiff complained about this treatment, Defendant Uhler placed him on an even more restrictive restraint order. *Id.* ¶ 27. In response to a further objection, Defendant Uhler came to Plaintiff's cell and told him that the SHU was "his house" and that "no court, you or anyone going to tell me what to do or how to run my jail." *Id.* ¶ 28. Defendant Uhler then told Plaintiff that the restraint order would last until he felt like retracting it. *Id.*

In Plaintiff's complaint, he organizes these events into six causes of action:

(1) an Eighth Amendment violation based on the events of February 10, 2013 (Dkt. No. 7 ¶ 11);

(2) an Eighth Amendment violation based on the events of February 20, 2013 (*id.* ¶ 16);

(3) an Eighth Amendment violation based on the events in 2011 (*id.* ¶ 20);

(4) Eighth Amendment and Due Process violations based on the restraint orders (*id*. ¶ 25);

(5) violations of the First Amendment and due process based on the medical disclosures (*id*. ¶ 30); and

(6) violations of due process based on the events of the two hearings (*id*. ¶ 33).

Plaintiff also explains that, while he attempted to exhaust his administrative remedies, he filed this suit before receiving final disposition from the Central Office Review Committee ("CORC"). (Dkt. No. 7 ¶¶ 4-5.) In the complaint, he states that his failure to exhaust is justified by threats of violence from Defendant Burnelle and the failure of the Great Meadow Superintendent and CORC to respond in a timely manner. *Id*. Plaintiff does not specify in the complaint the content of the grievance on appeal, or how it applies to the six causes of action. *Id*.

## II.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

Defendants argue that Plaintiff's claims should be dismissed because he failed to exhaust administrative remedies prior to filing this suit. (Dkt. No. 47-1 at 3-6.[2]) Plaintiff admits that he failed to exhaust, but asserts in his complaint that he should be excused from this requirement because Defendant Burnelle threatened him and CORC failed to render a disposition within the amount of time required by regulation. (Dkt. No. 7 ¶ 4.) For the reasons below, I recommend that Defendants' motion be denied.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

---

[2]    Citations to page numbers in Defendants' memorandum of law and Plaintiff's opposition refer to the page numbers in the original documents rather than to the page numbers assigned by the Court's electronic filing system.

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the

superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable civil rights claim. *Jones*, 549 U.S. at 211-17. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id*. at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id*. at 215-16.

## A. Facts Considered in This Analysis

In this case, Plaintiff initially pled very sparsely concerning his grievance(s), admitting only that some grievance was still on appeal with CORC at the time the suit was filed. (Dkt. No. 7 ¶ 4.) In Plaintiff's subsequent memorandum in opposition to Defendants' motion to dismiss, he laid out the procedural history of his grievances for the events contained in his complaint. (Dkt. No. 52 at 9-11.) Plaintiff clearly explains in his opposition papers that all but the first two claims have been exhausted, having been appealed as grievances through all three levels and

decided by CORC. *Id.*

In reply, Defendants maintain that all claims should be dismissed despite the clarification in Plaintiff's opposition. (Dkt. No. 55 at 2.) They contend that, because this is a 12(b)(6) motion, Plaintiff's language in the complaint, a "broad concession that he failed to [exhaust]," is the only statement this Court may consider when deciding the motion. *Id.* This is not the case.

As Plaintiff correctly states (Dkt. No. 61 at 2-3), while motions to dismiss are usually constrained to facts in the complaint, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quoting *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990)) (*vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004)). Specifically, a pro se plaintiff's memorandum in opposition to a motion to dismiss should be seen as effectively amending the complaint, so far as there is no contradiction. *Cusamano v. Sobek,* 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009). Here, none of the new facts in Plaintiff's memorandum contradict any facts stated in the complaint. (Dkt. Nos. 7 and 52.) Therefore, the additional, clarifying information in that memorandum may be considered when deciding this motion to dismiss.

### B.       Whether Plaintiff Has Exhausted

The new facts in Plaintiff's opposition allege that a grievance concerning events in the third and fourth causes of action "proceeded through all three steps of the review and was unanimously accepted by CORC." (Dkt. No. 52 at 10-11.)

As to the fifth and sixth causes of action, DOCCS has a separate and distinct

administrative process for inmates to appeal the result of disciplinary hearings, which is not

referred to as a "grievance" process. In fact, the regulations specifically state that the results of

disciplinary hearings are "non-grievable." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(2)

(2010). For Tier I and Tier II disciplinary hearings, the appeal is to the facility superintendent or

a designee. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 252.6, 253.8 (2010). For Tier III

disciplinary hearings, the appeal is to the DOCCS Commissioner or a designee. N.Y. Comp.

Codes R. & Regs. tit. 7, § 254.8. An inmate's appeal of a disciplinary hearing decision

"constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for

adjudication in federal court." *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009).

Plaintiff appealed the decision of the hearing, based on the same facts as he presented in

the fifth and sixth causes of action, to the facility superintendent. (Dkt. No. 52 at 11.) Defendant

Prack ruled on this appeal, and granted a partial reduction in Plaintiff's punishment. (Dkt. No. 7

¶¶ 44-45, 54-55.) As such, this appeal is complete and Plaintiff exhausted his administrative

remedies with regard to the fifth and sixth causes of action for the purposes of the PLRA.

Plaintiff states that he submitted a grievance to the IGRC regarding the first and second

causes of action. (Dkt. No. 52 at 9.) The IGP supervisor forwarded the grievance directly to the

superintendent on March 11, 2013. *Id*. The superintendent failed to respond within the time

required by the regulations. *Id*. At Plaintiff's request, the IGP supervisor forwarded Plaintiff's

grievance to CORC on April 2, 2013. *Id*. On April 7, 2013, Defendant Burnelle threatened to

harm Plaintiff if he proceeded with the grievance. *Id*. Plaintiff filed the complaint in this action

on May 2, 2013. (Dkt. No. 1.) On May 24, 2013, Plaintiff wrote to the IGP Director of DOCCS

inquiring about the status of his grievance. (Dkt. No. 52 at 10.) She did not respond. *Id*. As of

November 15, 2013, CORC had not issued a decision.  *Id*. at 10, 19.

This grievance was the subject of the Plaintiff's original estoppel and excuse arguments contained in the complaint.  (Dkt. No. 52 at 9-10.)  The only causes of action which Plaintiff has failed to exhaust are the first and second.

Plaintiff's failure to exhaust, however, does not end the review.  The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies.  *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[3]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available:

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  *Id*. (citations omitted).

1.    Availability of Remedy

Plaintiff argues in his complaint that threats by Defendant Burnelle and CORC's failure

_____

[3]    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

12

to render a disposition within the regulations' time frame made the grievance process functionally unavailable to him.  (Dkt. No. 7 ¶ 5.)

Generally speaking, the three phase appeals process used in New York is sufficiently "available" to inmates.  *See Hemphill*, 380 F.3d at 686-87.  "The test for deciding whether the ordinary grievance procedures were functionally available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)).  The *Hemphill* decision held that, even though a plaintiff may have attempted to grieve according to procedure (and therefore not all administrative remedies were rendered unavailable), "some procedures that would ordinarily be available were effectively unavailable" if the prisoner was threatened.  *Hemphill*, 380 F.3d at 687.

In this case, it may be difficult for the Plaintiff to prove that the grievance procedure was unavailable to him in fact, because he had successfully utilized it at least twice, and he admits that his appeal to CORC was pending when he filed this suit.  (Dkt. No. 7 ¶ 4.)  However, there is still a question as to whether alleged threats by Defendant Burnelle may have caused Plaintiff to fail to wait until CORC responded to file this action.  Because there is little evidence available to evaluate the effect these threats may have had in this case, the matter should be set for an evidentiary hearing.  Furthermore, even if the evidence is not sufficient to establish that the grievance procedure was unavailable to Plaintiff, threats may nevertheless create "special circumstances" which justify failure to exhaust.  This matter is discussed below.

2.    Estoppel

Plaintiff argues that Defendant Burnelle's threats should estop Defendants from invoking

non-exhaustion.  (Dkt. No. 52 at 10.)  "Defendants have been estopped from asserting the

exhaustion defense where threats made by prison staff prevented plaintiff from filing a grievance

. . . [or] where plaintiff was denied grievance forms or writing materials."  *Hale v. Rao*, 768 F.

Supp. 2d 367, 376 (N.D.N.Y. 2011) (citation omitted).  Here, Plaintiff states that Defendant

Burnelle threatened to harm him if he pursued the grievance regarding the first and second causes

of action.  (Dkt. No. 52 at 9.)  A reasonable trier of fact could conclude, if Plaintiff's statement is

credited, that Defendant Burnelle's conduct estops him from asserting the exhaustion defense.

Therefore, I recommend that this matter be set for an evidentiary hearing.

### 3.  Special Circumstances

In  *Giano v. Goord*, the Second Circuit held that:

> there are certain "special circumstances" in which, though
> administrative remedies may have been available and though the
> government may not have been estopped from asserting the
> affirmative defense of non-exhaustion, the prisoner's failure to
> comply with administrative procedural requirements may
> nevertheless have been justified.

380 F.3d 670, 676 (2d Cir. 2004).  The standard for determining whether such circumstances

justifying failure to follow DOCCS procedures exist is the same as is applicable in a retaliation

claim, namely "whether 'a similarly situated individual of ordinary firmness' would have been

deterred from following regular procedures."  *Hemphill*, 380 F.3d at 690 (quoting *Davis*, 320

F.3d at 353 (2d Cir. 2003)).

Failure by CORC to respond in a timely manner is not alone sufficient to qualify as a

"special circumstance."  *Ford v. Smith*, No. 9:12-CV-1109 (TJM/TWD), 2014 U.S. Dist. LEXIS

20581, at *8-9, 2014 WL 652933, at *3 (N.D.N.Y Jan. 16, 2014).[4] However, threats of

retaliation for attempting to exhaust remedies, even if they do not render the grievance process

unavailable, may still justify non-exhaustion as a "special circumstance" that might cause such an

inmate to fail to grieve in the "normally required way." *Hemphill,* 380 F.3d at 689 (quoting

*Giano*, 380 F.3d at 678).

In *Hemphill*, the court observed that "it is arguable that Hemphill may have reasonably

concluded that writing directly to the Superintendent involved an acceptable level of risk,

whereas filing a level 1 grievance . . . was too fraught with danger." *Hemphill*, 380 F.3d at 690.

The court also observed that "filing a civil rights complaint may enable an inmate to draw

outside attention to his complaints, thereby neutralizing threatened retaliatory conduct from

prison employees." *Id.* at 688.

In this case, Plaintiff's procedural anomaly did not lie in failing to file a grievance, but in

failing to wait until the final appeal had been decided.  (Dkt. No. 7 ¶ 4.)  Nevertheless, it is

arguable that a similarly situated prisoner of ordinary firmness would not have deemed waiting

for a response from CORC a safe course of action.

If Plaintiff's allegations are taken as true, then he had already been assaulted at least once

for reporting the conduct which is also the subject of the grievance in question.  (Dkt. No. 7 ¶

18.)  The superintendent did not respond, forcing Plaintiff to appeal it without disposition

directly to CORC.  (Dkt. No. 52 at 9-10.)  Defendant Burnelle threatened to physically harm him

if he proceeded with the appeal of the grievance.  (Dkt. No. 7 ¶ 4).  CORC failed to respond in a

---

[4]        The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)
(per curiam).

timely manner, after the superintendent had done the same, which could reasonably lead Plaintiff to fear that no disposition was forthcoming and that Defendant Burnelle might harm him before a decision was rendered. *Id*. at 10. Based on the record, I cannot say as a matter of law that an individual of ordinary firmness in such circumstances would have continued to await a response from CORC when he had actual knowledge that his jailers were capable of committing physical retaliation, and he had received credible threats that they would do so if he proceeded grieving.

Plaintiff "should have the opportunity to develop facts that would demonstrate that [Defendants' actions] would deter a reasonable inmate." *Hemphill,* 380 F.3d at 690 (quoting *Davis*, 320 F.3d at 354) (internal quotations omitted). This evidence could establish either that the grievance procedure was effectively unavailable or that special circumstances justified his failure to exhaust. Therefore, I recommend that Defendants' motion to dismiss be denied and that this matter be set for an evidentiary hearing on the exhaustion issue.

## IV.    LEGAL STANDARD GOVERNING MOTIONS TO SEVER

Federal Rule of Civil Procedure 21 allows a court to add or drop parties, or sever claims, on a motion or sua sponte. Fed. R. Civ. P. 21. The decision whether to sever a claim "is committed to the sound discretion of the trial court." *Greystone Cmty. Reinv. Ass'n v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 293 (D. Conn. 2009) (internal quotations omitted). Courts in this circuit generally consider whether: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; (2) the claims present some common question of law or fact; (3) settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims. *Id.*

The first two factors are also the requirements for proper permissive joinder under Rule 20. Fed. R. Civ. P. 20. It is therefore necessary, in analyzing whether severance under Rule 21 is appropriate, to analyze whether joinder was proper under Rule 20.

In assessing whether the requirements of Rule 20 are met, courts must accept the factual allegations in a plaintiff's complaint as true. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20. *Id*. The requirements of Rule 20 are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (quotation and citation omitted).

## V.  ANALYSIS

In moving to sever, Defendants argue that Plaintiff's claims are all unrelated, and that "defendants are substantially prejudiced" by inclusion of these claims in the same complaint. (Dkt. No. 47-1 at 6.) Plaintiff argues that his claims are properly joined, and that they are logically related in a chain of events which began at Upstate in 2011 and ended at Great Meadow in 2013. (Dkt. No. 52 at 14-15.) For the reasons below, I recommend that Defendants' motion to sever be denied.

### A.  "Arising Out of" Requirement

"What will constitute the same transaction or occurrence . . . is approached on a case by case basis." *Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citing 7 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1653 at 270 (1972)). Defendants argue that "plaintiff offered no basis upon which to find that his claims

are related," and that his claims should be severed because Plaintiff chose to plead discrete

claims, "rather than the retaliation conspiracy he refers to in his Memorandum of Law." (Dkt.

No. 55 at 4.) These arguments are both without merit.

 It is well-established that "when [a] plaintiff proceeds pro se . . . a court is obliged to

construe his pleadings liberally, particularly when they allege civil rights violations." *Hemphill,*

380 F.3d at 687 (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.2004)). Further, a

court must also interpret the pleadings in a way that will "raise the strongest arguments they

suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Construed liberally, Plaintiff's complaint contains allegations of an atmosphere of

retaliation, based on litigation by Plaintiff prior to the events in 2011. (Dkt. No. 7.) While it is

true that the timeline was made much more apparent in Plaintiff's memorandum of law, there are

facts in the complaint to connect the events into a series of occurrences sufficient to satisfy the

first half of the requirements for permissive joinder.

First, Plaintiff began (in the third cause of action) by requesting separation from Great

Meadow staff "based upon . . . threats of retaliation [for] his success in prior civil rights

litigations against officers at Great Meadow." (Dkt. No. 7 ¶ 21.) He was nevertheless transferred

to Great Meadow, where he was allegedly attacked for his prior litigation. *Id.* ¶ 24. When

Plaintiff was attacked on February 10, 2013, (the first cause of action), Defendant Maguire

specifically referenced that prior civil rights litigation. *Id.* ¶ 13, n.1. Then, on February 20, 2013,

(the second cause of action), officers told Plaintiff that they were retaliating because he reported

the February 10, 2013, incident. *Id.* ¶ 18. The fifth and sixth causes of action arose from

hearings for the misbehavior reports submitted for the incidents alleged in the first and second

causes of action. *Id.* ¶¶ 33, 35, 48. The fourth cause of action further supports an atmosphere of retaliation, and was only made possible by the punishment handed down at the hearing described in the sixth cause of action. *Id.* ¶ 26.

The six claims in the complaint are logically related in a series of occurrences, apparent on the face of the liberally construed complaint. The fact that Plaintiff chose to plead six causes of action is not relevant. The complaint may have been inartfully drafted, but that does not make the facts of each claim less related.

### B.    Common Question of Law or Fact

Given this Court's obligation to construe the complaint in a way that will raise the strongest arguments it suggests, the complaint alleges an atmosphere of retaliation surrounding the Plaintiff. A common question of fact exists, namely, whether some common practice of retaliation in fact pervaded the acts committed by Defendants from Plaintiff's transfer in 2011 through his punishment in the SHU in 2013. A question of whether multiple defendants constitute some sort of joint enterprise to cause harm to a plaintiff is a common question sufficient to satisfy Rule 20(b). *Streeter v. Joint Indus. Bd. of Electrical Indus.*, 767 F. Supp. 520, 529 (S.D.N.Y. 1991).

Therefore, the threshold requirements of Rule 20 are satisfied, and the claims have all been properly joined.

### C.    Discretionary Factors

Defendants contend that allowing these claims to move forward in a single lawsuit is prejudicial because of the "suggestion" of a grand conspiracy. (Dkt. No. 47-1 at 7-8.) While his complaint falls short of pleading conspiracy, Plaintiff's complaint does allege, on the whole, that

the acts were all related based on retaliation for earlier events. (Dkt. No. 7.) This is not a prejudicial side effect of pleading these claims together, but an intended yet inartfully pleaded allegation. Contrary to Defendants' assertions that granting the motion to sever would prevent prejudice, it would actually prejudice Plaintiff, who would find it more difficult to allege an atmosphere of retaliation across multiple suits. Furthermore, courts in this circuit have found that joinder of seemingly unrelated acts of the same type may be proper if the plaintiff alleges a pattern or practice of misconduct, even if he does not allege an official policy. *See, e.g., Costello v. Home Depot U.S.A., Inc.,* 888 F. Supp. 2d 258, 264 (D. Conn. 2012).

Nor is it true, as Defendants claim, that the causes of action would all utilize totally different evidence and witnesses. While some evidence and witnesses are unique to a single cause of action, there is substantial overlap. For example, the officers who witnessed the attacks in February 2013 may also have information that contradicts the misbehavior reports which gave rise to the hearings in March 2013. It is not clear that judicial economy would be served by severing the counts at this point, before discovery.

Defendants argue that "permitting inmate plaintiffs to lump together numerous unrelated claims in a single complaint ultimately impacts judicial economy in a negative way insofar as the practice frustrates the intent of the Prison Litigation Reform Act." (Dkt. No. 47-1 at 8.) Defendants' argument hinges on the PLRA's "three-strikes rule." The three-strikes rule provides that:

> [i]n no event shall a prisoner bring a civil action . . . under this section
> if the prisoner has, on 3 or more prior occasions, while incarcerated
> or detained in any facility, brought an action or appeal in a court of
> the United States that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief may

> be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (2006).  Defendants argue that allowing unrelated claims in one proceeding would unfairly benefit a theoretical prisoner plaintiff who filed "35 unrelated claims in three complaints, 27 of which fail to state a claim."  (Dkt. No. 47-1 at 9.)  Defendants do not argue, however, that any of Plaintiff's claims (as opposed to the claims of their theoretical prisoner plaintiff) are frivolous, malicious, or fail to state a claim upon which relief may be granted.  Rather, as discussed above, Defendants' motion to dismiss is based entirely on exhaustion grounds.  Moreover, this Court has previously found Plaintiff's complaint sufficiently well-pleaded to survive initial review.  (Dkt. No. 10.)

Based on the reasoning set forth above, I find that the claims are related, are properly joined, and that to sever them would create undue prejudice against the pro se Plaintiff.  Therefore, I recommend that Defendants' motion to sever be denied.

## VI.     CONCLUSION

For the foregoing reasons, I recommend that the Defendants' motion to dismiss and motion to sever be denied, and that Defendants be directed to answer all claims in the complaint within thirty days of any order adopting this Report-Recommendation.  Further, because of the issues of fact surrounding exhaustion, I recommend that the matter be scheduled for an evidentiary hearing concerning exhaustion on all six causes of action.  *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt.

No. 47) be **DENIED**; and it is further

      **RECOMMENDED** that Defendants' motion to sever (Dkt. No. 47) be **DENIED**; and it is further

      **RECOMMENDED** that Defendants be directed to answer all causes of action within thirty days of any order adopting this Report-Recommendation; and it is further

      **RECOMMENDED** that this matter be scheduled for an evidentiary hearing on the matter of exhaustion for all causes of action; and it is further

      **ORDERED** that the Clerk provide Plaintiff with a copy of *Ford v. Smith*, No. 9:12-CV-1109 (TJM/TWD), 2014 U.S. Dist. LEXIS 20581, 2014 WL 652933 (N.D.N.Y Jan. 16, 2014).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: June 28, 2014
      Syracuse, New York

                               Thérèse Wiley Dancks
                               United States Magistrate Judge