UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

DANA GIBSON,

                                Plaintiff,

                                                        9:13-cv-00503
                                                        (GLS/TWD)

v.

C. ROSATI, et al.,

                                Defendants.

───────────────────────────────────────────

APPEARANCES:                            OF COUNSEL:

DANA GIBSON
05-A-3824
Plaintiff *pro se*
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN              JOSHUA E. McMAHON, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

## I.      INTRODUCTION

        This *pro se* civil rights action, commenced by Plaintiff Dana Gibson, an inmate in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), pursuant to 42 U.S.C. § 1983, has been referred for Report and Recommendation

by the Honorable Gary L. Sharpe, Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rule 72.3(c).  In the third amended complaint, the operative pleading, Plaintiff

alleges:

1. Defendants Willie J. Tabb, Jr. ("Tabb"), Theresa A. Knapp-David ("Knapp-David"), and Vernon Fonda ("Fonda") violated Plaintiff's Eighth Amendment rights by failing to prevent Plaintiff's transfer to Great Meadow Correctional Facility ("Great Meadow") in October 2011;

2. Defendants C. Rosati ("Rosati"), D. Maguire ("Maguire"), C. Burnelle ("Burnelle"), P. LaRose ("LaRose"), S. DeLong ("DeLong"), S. Shattuck ("Shattuck"), and P. McNally ("McNally") used excessive force or failed to intervene in violation of Plaintiff's Eighth Amendment rights on February 10, 2013;

3. Defendants T. Johnston ("Johnston"), R. Lowry ("Lowry"), and John Kitchner ("Kitchner") used excessive force in violation of Plaintiff's Eighth Amendment rights on February 20, 2013;

4. Defendants J. Scroggy ("Scroggy"), Birrell ("Birrell), and Albert Prack ("Prack") violated Plaintiff's Fourteenth Amendment right to due process during the disciplinary hearing stemming from the events that transpired on February 10, 2013;

5. Defendants DeLuccia ("DeLuccia"), Birrell, and Prack violated Plaintiff's Fourteenth Amendment right to due process during the disciplinary hearing stemming from the events that transpired on February 20, 2013; and

6. Defendant Donald Uhler ("Uhler") violated Plaintiff's Eighth and Fourteenth Amendment rights when he issued an indefinite restraint order and failed to provide weekly renewals.

(*See generally* Dkt. No. 119.[1])

Plaintiff has now moved for partial summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure on his (1) Eighth Amendment failure to protect claim against Tabb,

Knapp-David, and Fonda; (2) Fourteenth Amendment due process claim against Scroggy,

DeLuccia, Birrell, and Prack; and (3) Fourteenth Amendment due process claim against Uhler.

---

[1] By Summary Order entered September 27, 2016, all claims against Defendant Vanessa Brown were dismissed.  (Dkt. No. 183.)

(Dkt. No. 153.[2])  Tabb, Knapp-David, Scroggy, DeLuccia, Birrell, Prack, and Uhler have

opposed Plaintiff's motion, and have cross-moved for summary judgment.  (Dkt. No. 163.)

Plaintiff has opposed Defendants' cross-motion, and also filed a reply.  (Dkt. No. 180.)  For the

reasons explained below, the Court recommends denying Plaintiff's motion, and granting

Defendants' cross-motion.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Transfer from Upstate to Great Meadow

In May of 2011, Plaintiff was incarcerated at Upstate Correctional Facility ("Upstate").

(Dkt. No. 119 at ¶ 15.[3])  On May 16, 2011, Plaintiff wrote a letter to Tabb, his corrections

counselor, and requested an "employee separation" from seven corrections officers at Great

Meadow.  (Dkt. No. 153-4 at 15-16.[4])  Specifically, Plaintiff requested an "employee separation"

from Great Meadow corrections officers Ricky R. Therrien ("Therrien"), R. Gosselin

("Gosselin"), Leroy F. Monroe ("Monroe"), Glenn C. Warner ("Warner"), Ricky J. Hance

("Hance"), and Edmund Trombley ("Trombley"), and Sergeant Mark W. Cleveland

("Cleveland").  *Id.* at 15.  Plaintiff stated that he had previously sued those same officers in two

civil actions filed in the Northern District of New York, *Gibson v. Mitchell-Oddey*, No. 9:03-cv-

00082, and *Gibson v. Allen*, No. 9:07-cv-00617.  *Id.* at 15-16.  As such, Plaintiff feared if he

---

[2] Throughout this litigation, Plaintiff has made personal references using both male and female pronouns.  (*See, e.g.*, Dkt. Nos. 119, 153, and 180.)  Because Plaintiff has used male pronouns in the motion currently pending, the Court will do the same.

[3] Paragraph references are used where a document contains consecutively numbered paragraphs.

[4] Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system.

3

were transferred to Great Meadow, they would "physically harm [Plaintiff] in retaliation for [his] success in such lawsuits against them." *Id.* at 16.[5]

On May 19, 2011, Tabb verbally advised Plaintiff that he would not submit Plaintiff's applications for "employee separations." (Dkt. No. 153-2 at ¶ 4.) Tabb returned Plaintiff's letter, which included the hand-written notation, "I cannot provide this info," dated May 19, 2011. (Dkt. No. 153-4 at 16.)

On May 23, 2011, Plaintiff filed a grievance (UST-46255-11) with the Inmate Grievance Resolution Committee ("IGRC") requesting "employee separation" from Therrien, Gosselin, Monroe, Warner, Hance, Trombley, and Cleveland "based upon their threats to physically harm [him] in full retaliation" for filing *Gibson v. Mitchell-Oddey*, No. 9:03-cv-00082, and *Gibson v. Allen*, No. 9:07-cv-00617. (Dkt. No. 163-3 at 6-7.) Plaintiff stated that Tabb "refused to proceed" with his request for "employee separations," and that Senior Corrections Counselor Smith was aware of Plaintiff's request but "nothing was done." *Id.* at 16. Plaintiff requested "that this matter be fully investigated and such documents be proceeded and forwarded to Central Office for such requested employee separations." *Id.*

By written notice dated May 31, 2011, Tabb advised Plaintiff that "[i]nmates cannot file separations from staff. Staff can file separation from inmates through Central Office." (Dkt. No. 153-4 at 17.)

On June 7, 2011, the IGRC denied Plaintiff's grievance because "[t]here is no provision for inmates to be separated from staff." (Dkt. No. 163-3 at 8.) Plaintiff's appeal to the Superintendent was also denied:

---

[5] Plaintiff also requested separation from four corrections officers at Attica Correctional Facility ("Attica"). (Dkt. No. 153-4 at 15-16.)

4

> There is no provision for inmates to be separated from staff, as requested by [Plaintiff]. In the current matter, [Plaintiff] was advised of this fact by the assigned correctional counselor through written correspondence.

(Dkt. No. 163-3 at 4.) Plaintiff filed an appeal to the Central Office Review Committee

("CORC"), arguing:

> Contrary to [the Superintendent's decision], prison officials have an inherent duty under the Eighth Amendment of the U.S. Constitution to take "reasonable measures to guarantee the safety of inmates." *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

> Accordingly, I requested such employee separations from such employees based upon their threats to physically harm me in retaliation for my successfully suing them in Federal Court.

> While such employee threats were taken lightly in the past in October, 2007, on October 11, 2007, upon being transferred to Great Meadow Correctional Facility where I was cut in my face by Correction Officer Edmund Trombley while other employees watched. Such actions resulted in my success in suing officer Trombley and others named in this grievance.

> Accordingly this grievance should be granted and I should be separated from such employees as requested.

(Dkt. No. 163-3 at 4-5.)

On July 27, 2011, the Prisoners' Rights Project sent a letter to Fonda, DOCCS Acting

Inspector General, requesting that Plaintiff's "concerns and his request to be housed in a facility

other than Attica and Great Meadow" be investigated. (Dkt. No. 153-4 at 26.)

On August 4, 2011, Plaintiff sent correspondence to Commissioner Brian Fischer

("Fischer"), requesting that he not be transferred to Great Meadow or Attica "based upon threats

made on [his] life by employees at such facilities." (Dkt. No. 153-2 at ¶ 5.) Plaintiff advised

Fischer that he had successfully sued Therrien, Gosselin, Monroe, Warner, Hance, Trombley,

and Cleveland, and that "all named employees of Great Meadow ha[ve] threaten[ed] to

physically harm [Plaintiff] if [he] returned to Great Meadow in retaliation for suing them."  (Dkt. No. 153-4 at 19-20.)  Plaintiff indicated that Tabb had refused to proceed with his employee separation requests and that his grievance (UST-46255-11) was pending CORC review.  *Id.* Plaintiff's letter was referred to Associate Commissioner Knapp-David.  (*See* Dkt. No. 153-4 at 22.)

On August 9, 2011, Plaintiff's concern that he would be assaulted by staff at Great Meadow and Attica was assigned to non-party DOCCS Inspector General's Officer Investigator, Jon Nocera ("Nocera").  (Dkt. No. 163-4 at 1.)  Nocera interviewed Plaintiff on August 17, 2011. *Id.*  Following the investigation, Nocera determined that Plaintiff's claims were unsubstantiated, concluding that there was "no evidence to support the allegations of staff misconduct."  *Id.*

On August 17, 2011, CORC issued the following:

> Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reason stated.
>
> CORC asserts that there is no provision in Department policy for an inmate to request a separation from staff.  The grievant is advised to address specific instances of harassment by staff to the attention of a supervisor for any remedial action deemed necessary.
>
> In regard to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

(Dkt. No. 163-3 at 1.)

Subsequently, by letter dated August 24, 2011, Knapp-David responded to Plaintiff's August 4, 2011, letter:

> The Office of Classification and Movement reviews an offender's transfer history and the separation system prior to issuing a transfer order.  Be assured this procedure will be utilized prior to your transfer being considered.

6

> Please address any further issues regarding transfer and/or
> separation with your assigned Correction Counselor who is in the
> best position to advise you.

(Dkt. No. 153-4 at 22.)

On August 29, 2011, Plaintiff sent a second letter to Tabb and requested that he not be transferred to Great Meadow or Attica "based upon threats made upon [his] life by employees of such facilities whom threatened to physically harm" him if he was transferred back to either facility. *Id*. at 23. On September 6, 2011, during his quarterly review with Tabb, Plaintiff provided the following statement: "I am ready to be released from [the segregated housing unit ("SHU")] and request not to return to Attica or Great Meadow based on threats." *Id*. at 24.

On October 31, 2011, Plaintiff was transferred to Great Meadow. (Dkt. No. 153-1 at ¶ 5.) From October 31, 2011, to February 10, 2013, Plaintiff testified that he had "plenty" of interactions with the officers he had previously sued, including Sergeant Cleveland. (Dkt. No. 163-3 at 28.) Plaintiff also testified that he did not file a single grievance, or otherwise write to complain, about a risk to his safety prior from September 7, 2011, until February 10, 2013. *Id*. at 28-29.

According to Plaintiff, on February 10, 2013, Plaintiff was physically attacked by Rosati, Burnelle, DeLong, LaRose, and Shattuck, while McNally failed to intervene, in "full retaliation" for Plaintiffs success in prior civil rights actions. (Dkt. No. 153-2 at ¶ 7; Dkt No. 119 at ¶¶ 9-11.) Plaintiff claims Maguire stated, "[s]o you really think your hot shit for suing my bud Sergeant Cleveland and the rest of my guys for tuning you up . . .well your shit stops here today." (Dkt. No. 119 at ¶ 10 (brackets, ellipses, and errors in original).) During the attack, Maguire stated, "[T]his is what you get for taking us to court motherfucker." (Dkt. No. 119 at ¶ 11 (brackets in original).)

Based on the above, Plaintiff alleges Tabb, Knapp-David, and Fonda "failed to take reasonable measures to guarantee" Plaintiff's safety in violation of his rights under the Eighth Amendment.  (Dkt. No. 153-2 at ¶ 7.)

### B.    First Disciplinary Hearing

On February 10, 2013, Plaintiff was issued three misbehavior reports.  (Dkt. No. 153-2 at ¶ 13.)  Specifically, Maguire charged Plaintiff with refusing a direct order, attempted assault, threats, violent conduct, and creating a disturbance.  (Dkt. No. 153-4 at 35.)  Burnelle charged Plaintiff with refusing a direct order, refusing to work, harassment, and threats.  *Id*. at 36.  Non-party Sergeant T. Vedder charged Plaintiff with refusing a direct order and violent conduct.  *Id*. at 37.

Plaintiff was served copies of the misbehavior reports on March 5, 2013.  (Dkt. No. 153-2 at ¶ 13.)  At Plaintiff's request, Scroggy was assigned to assist Plaintiff in preparation for the Tier III disciplinary hearing.

Plaintiff's first disciplinary hearing, which combined the three February 10, 2013, misbehavior reports, began on March 14, 2013.  (Dkt. No. 153-4 at 51.)  Birrell served as the hearing officer and Plaintiff pleaded "not guilty" to all charges.  *Id*.  On March 22, 2013, Birrell found Plaintiff guilty of all charges and sentenced Plaintiff to fourteen months in the SHU, with a corresponding loss of commissary, packages, and phone use.  *Id*. at 51-52.  In support of his determination, Birrell relied upon the combination of the inmate misbehavior reports, investigation reports, mental health testimony, and use of force report, along with Plaintiff's testimony.  *Id*. at 53.

Plaintiff appealed Birrell's decision, arguing among other things, he was deprived of his right to call a witness, he received insufficient assistance, the hearing officer's decision was not based upon substantial evidence, and the penalties imposed were excessive.  *Id.* at 55-62.

On May 28, 2013, Prack affirmed Birrell's decision and modified Plaintiff's sentence, reducing Plaintiff's SHU confinement from fourteen months to eight months, and the loss of packages, commissary, and phone from fourteen months to twelve months.  *Id.* at 63.  By memorandum dated May 28, 2013, Prack advised Upstate Superintendent David A. Rock that Plaintiff's sentenced was modified because "the nature of the offense, however serious, does not warrant the penalty imposed."  (Dkt. No. 163-9 at 2.)

Based on the above, Plaintiff alleges Scroggy, Birrell, and Prack violated his Fourteenth Amendment due process rights during the first disciplinary hearing.  (Dkt. No. 119 at ¶ 23.)

### C.      Second Disciplinary Hearing

On February 20, 2013, Plaintiff was issued two inmate misbehavior reports.  (Dkt. No. 153-2 at ¶ 13.)  Specifically, Johnston charged Plaintiff with (1) attempted assault on staff, (2) violent conduct, (3) refusing a direct order, and (4) refusing staff directions for movement (lock in/lock out procedures).  (Dkt. No. 153-4 at 65.)  Non-party corrections officer Turner charged Plaintiff with assault.  *Id.* at 66.  Plaintiff was served with copies of the inmate misbehavior reports on March 5, 2013.  *Id.* at 69.  At Plaintiff's request, DeLuccia was assigned to assist Plaintiff in preparation for the second disciplinary hearing.  (Dkt. No. 163-10 at 25-26.)  Birrell served as the hearing officer.  *Id.* at 2.

Plaintiff's second disciplinary hearing also commenced on March 14, 2013, and on March 22, 2013, Birrell found Plaintiff guilty of all charges.  *Id.*  In support of his decision, Birrell relied upon the inmate misbehavior reports, unusual incident report, use of force report,

and mental health testimony.  *Id*. at 4.  Plaintiff was sentenced to eighteen months in the SHU, with a corresponding loss of packages, commissary, and phone privileges.  *Id*. at 2.  Following the Superintendent's review, Plaintiff's SHU confinement was reduced to ten months.  *Id*. at 1.

Plaintiff appealed Birrell's decision, arguing, among other things, he was deprived of notice of the charges, he received insufficient employee assistance, the hearing officer's decision was not based upon substantial evidence, and the penalties imposed were overly harsh and excessive.  (Dkt. No. 153-4 at 73-81.)  On May 28, 2013, Prack reviewed and affirmed Birrell's decision and the modified sentence.  (Dkt. No. 153-4 at 81.)

Based on the above, Plaintiff alleges DeLuccia, Birrell, and Prack violated his Fourteenth Amendment due process rights during the secondary disciplinary hearing.  (Dkt. No. 119 at ¶ 23.)

### D.    Restraint Order

On or about April 18, 2013, Plaintiff was transferred from Great Meadow to Upstate. (Dkt. No. 153-2 at ¶ 9.)  As a maximum security facility, all inmates housed at Upstate are required to wear mechanical restraints when outside of their cell.  (Dkt. No. 163-13 at ¶ 24.) Mechanical restraints include handcuffs and a waist chain.  *Id*. at ¶ 25.

On April 20, 2013, non-party Sergeant Gokey ("Gokey") sent a memorandum (subject: "restraint request") request to Uhler, Deputy Superintendent for Security at Upstate, requesting that Plaintiff "be placed on an order for use of a block box and waist chain every time he exits his cell."  (Dkt. No. 163-6 at 17.)  Gokey indicated that due to Plaintiff's propensity for violence, along with his "ability to slip out of handcuffs, necessitates the request for the use of the black box and waist chain restraints to aid in the safety and security of staff[.]"  *Id*.

On April 22, 2013, Uhler issued an Interdepartmental Communication (subject: "retention strap"), advising that "due to [Plaintiff's] attempt to pull the mechanical restraints into his cell, [Plaintiff] will now be handcuffed in back, with a retention strap applied every time he leaves and enters his cell." *Id.* at 16.

On April 23, 2013, Uhler issued a second Interdepartmental Communication (subject: "waist chain/black box"), advising that due to Plaintiff's "ability to remove his secured hand restraints, [Plaintiff] will be secured with full restraints, to include a waist chain and black box during all movement out of his cell." *Id.* at 15. Uhler advised "this procedure" would continue until he withdrew the order. *Id.*

On April 24, 2013, Plaintiff filed a grievance (UST-51794-13) claiming that on April 22, 2013, and April 23, 2013, Uhler placed him on a "restraint order of a retention strap, waist chain, and black box" and that the order was "without just cause[.]" *Id.* at 9. Plaintiff argued that Uhler's order was being "used" against him for disciplinary and retaliatory purposes. *Id.* On May 7, 2013, the IGRC advised Plaintiff that he was "placed on full restraints due to his ability to remove his secured hand restraints. He was put on a retention strap because he attempted to pull the mechanical restraints into his cell." *Id.* at 11. Plaintiff appealed to the Superintendent. *Id.*

On May 17, 2013, the Superintendent denied Plaintiff's grievance, finding that the staff acted appropriately, there was no misconduct, and that no further action would be taken. *Id.* at 8. The Superintendent further advised that Plaintiff would "remain on a restraint order until it is removed by the Deputy Superintendent for Security." *Id.*

On May 21, 2012, Plaintiff appealed to CORC, arguing that he was "not being afforded proper 7 day reviews and there is no reason for such restraint order and such is being imposed as

11

a form of disciplinary." *Id.* (errors in original).  CORC received Plaintiff's appeal on May 31, 2013.  *Id.* at 5.

On September 17, 2013, in response to an electronic inquiry from Inmate Grievance Program Coordinator Rebecca Loren (Subject: UST-51794-13) inquiring as to whether "Form #2186 and #2186 Renewal" were completed, Uhler ultimately responded:

> I have reviewed directive 4933 and spoke with Col. Kirkpatrick, we both agree that the current procedure being used at Upstate is in compliance of the directive.  We are not applying further restraints and/or additional restraints to a[n] inmate.  In the directive, it sates [sic] that we can use hand restraints with a waist chain.  I am simply directing what type of waist chain to be used.

*Id.* at 2-4.

On October 9, 2013, CORC issued a decision finding Plaintiff was on a "retention strap order" for security reasons as outlined in Uhler's April 23, 2013, memorandum, and was not on a "restraint order" requiring a seven day review.  *Id.* at 1.  CORC directed Plaintiff to address concerns regarding restraints to supervisory staff for the most expeditious means of resolution, and further advised Plaintiff that he was "ultimately responsible for his actions."  *Id.*  CORC noted there was "no malfeasance by staff."  *Id.*

Based on the above, Plaintiff alleges Uhler placed him on an "indefinite restraint" order as a form of cruel and unusual punishment and without due process in violation of the Eighth and Fourteenth Amendments.  (Dkt. No. 119 at ¶¶ 18-20.)

## III.   APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of

showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 273 (citations omitted). The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). To defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted). Statements "that are devoid of any

13

specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999[6]) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks omitted)).

## IV.    ANALYSIS

### A.    Tabb, Knapp-David, and Fonda

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84

---

[6] The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) ("[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983.").

To prevail on a failure to protect claim, a plaintiff must demonstrate two elements, one objective and one subjective. To satisfy the objective prong of the test, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. That is, the deprivation "must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The standard "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Id.* (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)); (same). Under this standard, the plaintiff "must demonstrate that this grave harm was 'actual or imminent.'" *Dublin v. New York City Law Dep't*, No. 10 Civ. 2971 (LAP), 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003)).

As to the second prong, "[t]o prove deliberate indifference, the plaintiff must show that the 'official [knew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Celestin v. Premo*, No. 9:12-cv-301 (GLS/RFT), 2014 WL 272443, at *5 (N.D.N.Y. Jan. 24, 2014) (quoting *Farmer*, 511 U.S. at 836). Indeed, "[t]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, *and* he must also draw that inference." *Id.* (internal quotation and citation omitted; emphasis in original). Mere negligence by a prison official will not suffice. *Hayes*, 84 F.3d at 620; *Hathaway*, 37 F.3d at 66

("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

Here, Plaintiff alleges Tabb, Knapp-David, and Fonda failed to protect him in violation of the Eighth Amendment. (Dkt. No. 119 at ¶¶ 14-17.) Specifically, Plaintiff claims that Tabb and Knapp-David, "failed to take any reasonable measures to protect Plaintiff's health and safety" by refusing Plaintiff's requests for "employee separation" from certain employees at Great Meadow. (Dkt. No. 153-3 at 9-10.) Plaintiff claims that although Fonda opened an investigation to address Plaintiff's safety concerns, "no further action was taken." *Id.* Defendants argue that Plaintiff cannot establish either the objective or the subjective prong of his failure to protect claim. (Dkt. No. 163-1 at 5-9.)

To be sure, Plaintiff has offered evidence—through letters and grievances—that Tabb, Knapp-David, and Fonda were on notice that Plaintiff feared for his life if he was transferred to Great Meadow based on "verbal threats of retaliation," made by Great Meadow staff for "his success in prior civil litigation[.]" (Dkt. No. 153-4 at 15-16, 19-20, 22, 23, 26.) Similarly, at his deposition, Plaintiff confirmed that he requested not to be transferred to Great Meadow "because of the threats." (Dkt. No. 163-5 at 25.)

However, "[a] general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-cv-0175 (GLS/RFT), 2008 WL 902187, at *5 (N.D.N.Y. Mar. 31, 2008); *see, e.g.*, *Desulma v. City of New York*, No. 98Civ.2078, 2001 WL 798002, at *6-7 (S.D.N.Y. July 6, 2001) ("verbal statements alone do not indicate a substantial threat of serious harm."); *Colliton v. Gonzalez*, No. 07 Civ. 02125 (RJH)(MHD), 2011 WL 1118621, at *6 n.6 (S.D.N.Y. Mar. 23, 2011) ("verbal threats, even death threats," over the

course of eleven months before the altercation, "cannot give rise to a deliberate indifference claims absent evidence that [the inmate] was simultaneously subject to physical assault from the threatening inmates").

Here, the record evidence demonstrates Plaintiff feared retaliatory attacks "based on threats." As such, Plaintiff has failed to demonstrate that he was incarcerated under conditions sufficiently serious to support a deliberate indifference claim. Because Plaintiff cannot meet the objective prong of his deliberate indifference claim, the Court need not address the subjective prong. *See, e.g., Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (court need not reach subjective prong where plaintiff failed to satisfy the objective prong); *Goodwin v. Kennedy*, No. CV 13-1774 (SJF)(AKT), 2015 WL 1040663, at *11 (E.D.N.Y. Mar. 10, 2015) (same).

Accordingly, the Court recommends granting Defendants' cross-motion for summary judgment on this claim.

### B.    Scroggy, DeLuccia, Birrell, and Prack

Plaintiff alleges Scroggy, DeLuccia, Birrell, and Prack violated his Fourteenth Amendment due process rights during two Tier III disciplinary hearings. (Dkt. No. 119 at ¶¶ 23-37.) Plaintiff moves for summary judgment, arguing he was denied (1) advance notice of the charges, (2) adequate pre-hearing assistance, (3) the right to call witnesses, (4) a fair and impartial hearing officer, and (5) a disposition based upon reliable evidence. (Dkt. No. 153-3 at 14-22.)

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or polices." *Wilkinson v. Austin*, 545

U.S. 209, 221 (2005) (citation omitted). "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

To establish a procedural due process claim under § 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

      1.    <u>Liberty Interest</u>

To state a claim for procedural due process, there must first be a liberty interest which requires protection. *Lewis v. Murphy*, No. 9:12-CV-00268 (NAM/CFH), 2014 WL 3729362, at *7 (N.D.N.Y. July 25, 2014) (citing *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994)). An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Therefore, a plaintiff must show that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 783-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658.

As to the first factor, "[t]he prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor." *Liao v. Malik*, No. 9:13-CV-1497 (GTS/DEP), 2016 WL 1128245, at *4 (N.D.N.Y. Feb. 26, 2016) (collecting cases). As to the

second factor, the plaintiff bears the "burden of proving that the conditions of his confinement constituted an atypical, significant hardship in relation to the ordinary incidents of prison life in order to recover damages" under § 1983.  *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 260 (N.D.N.Y. 1998).

The Second Circuit has instructed that in determining whether an inmate's SHU confinement has imposed an atypical and significant hardship, a court must consider, among other things, both the duration and conditions of confinement.  *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013); *Davis v. Barrett*, 576 F.3d 129, 133-34 (2d Cir. 2009) (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999)); *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997)); *see also Murray v. Arquitt*, No. 9:10-CV-1440 (NAM/CFH), 2014 WL 4676569, at *14 (N.D.N.Y. Sept. 18, 2014).  Thus, while not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality.  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).

The Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights; however, general guidelines have been defined.  *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  Confinement for 101 days or fewer under typical punitive segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement."  *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting *Sealev v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)).  By contrast, 305 days or more of segregated confinement has been deemed an atypical and significant hardship.  *See Colon*, 215 F.3d at 231-32.  "A period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the

conditions of confinement indicate that it was an atypical and significant hardship." *Bunting*, 452 F. Supp. 2d at 456 (citing *Sealey*, 197 F.3d at 589); *see also Palmer*, 364 F.3d at 64-65.

In this case, Plaintiff was confined in the SHU from May 22, 2013, to January 21, 2014, (245 days), and from January 22, 2014, to May 19, 2014 (118 days), as punishment for the incidents that occurred on February 20, 2013, and February 10, 2013, respectively. (Dkt. No. 163-7 at 2.) Plaintiff thus served 363 consecutive days in the SHU. During this time, Plaintiff alleges that he suffered "a number of unlawfully harsh forms of treatment" including, but not limited to, the (1) deprivation of religion, (2) deprivation of medical care, (3) depravation of adequate law library services, (4) deprivation of exercise, (5) deprivation of showers, and (6) unlawful physical restraint orders. (Dkt. No. 119 at ¶¶ 32, 37.)

Defendants argue that "Plaintiff's sentences should not be considered in the aggregate for purposes of the liberty interest prong [because] [e]ach stemmed from an unrelated disciplinary hearing involving separate incidents that occurred ten (10) days apart from one another." (Dkt. No. 163-1 at 15 n.5.) The Court disagrees.

The Second Circuit has suggested that "separate SHU sentences 'should be aggregated for purposes of the *Sandin* inquiry' when they constitute a sustained period of confinement." *Giano v. Selksy*, 238 F.3d 223, 226 (2d Cir. 2001) (quoting *Sims v. Artuz*, 230 F.3d 14, 22-23 (2d Cir. 2000)); *see also Sealey*, 197 F.3d at 589 (requiring district court to aggregate sanctions that caused inmate to serve consecutive time in segregation); *Richardson v. Hillman*, 201 F. Supp. 2d 222, 229 (S.D.N.Y. 2001) (citing *Sealey* and noting that the Second Circuit "has expounded the responsibility for issuing officers to include the entire period in the SHU that a prisoner was confined, if the officer extended the confinement period to constitute an atypical penalty");

*Koehl v. Bernstein*, No. 10 Civ. (SHS)(GWG), 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (aggregating the 90 SHU confinement and 30 day keeplock confinement).

In this case, the Court finds it appropriate to consider Plaintiff's sentences in the aggregate.[7]  Accordingly, there can be no doubt that 363 days of consecutive SHU confinement "satisfies the *Sandin* inquiry based on duration alone."  *Bunting*, 452 F. Supp. 2d at 457 (aggregating the inmate's sentences imposed in May 1998, August 1998, and November 1998 (all from unrelated incidents), which resulted in 365 days of consecutive keeplock confinement). Because the Court finds Plaintiff's SHU confinement implicated a liberty interest, the Court need not address Defendants' argument that as to each period of SHU confinement, 254 days and 118 days, respectively, Plaintiff failed to establish that the conditions of his confinement constituted an atypical and significant hardship when compared to those of an ordinary prisoner.  (*See* Dkt. No. 163-1 at 15-19.)

    2.    Procedural Due Process

The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution."  *Sira*, 380 F.3d at 69.  The constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some

---

[7]  The Court further notes that DOCCS also considered Plaintiff's SHU confinement stemming from the February 10, 2013, and February 20 2013, incidents in the aggregate.  (*See* Dkt. No. 163-10 at 1.)  On March 26, 2013, Prack reduced Plaintiff's SHU confinement stemming from the February 20, 2013, misbehavior reports from eighteen months to ten months, noting that "[t]he combined confinement time of [thirty-two] months is reduced."  *Id.*

circumstances, the right to assistance in preparing a defense. *Wolff v. McDonald*, 418 U.S. 539, 564-70 (1974); *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).

The due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to . . . an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *Wolff*, 418 U.S. at 570-71). Due process in this context requires only that the hearing officer's decision not be arbitrary. *Id*. (quoting *Wolff*, 418 U.S. at 571). A decision is not "arbitrary" if it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied 'if there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "[O]nly 'reliable' evidence can constitute 'some evidence.'" *Id*. at 76 (quoting *Luna*, 356 F.3d at 488).

In addition, to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing. *See, e.g.*, *Clark v. Dannheim*, 590 F. Supp. 2d 429, 429 (W.D.N.Y. 2008) (citing, *inter alia*, *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary hearing because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.")).

3.    First Disciplinary Hearing

Plaintiff's first Tier III disciplinary hearing, pertaining to the charges stemming from the February 10, 2013, incident, commenced March 14, 2013. (Dkt. No. 153-4 at 42.) Plaintiff was charged with harassment, refusing a direct order, threats, facility program committee (refusing assignment), violent conduct, creating a disturbance, and assault on staff. *Id*. Plaintiff pleaded

"not guilty" to all charges. *Id.* On March 22, 2013, Plaintiff was found guilty of all charges, and sentenced to fourteen months of SHU confinement, with a corresponding loss of package, commissary, and phone privileges. *Id.*

Plaintiff claims he was denied adequate pre-hearing assistance, the right to present witnesses, and a fair and impartial hearing supported by reliable evidence. (Dkt. No. 119 at ¶¶ 23-37; Dkt. No. 153-2 at ¶¶ 13-31.) Defendants argue Plaintiff was afforded the minimum requirements of due process. (Dkt. No. 163-1 at 19-27.) The Court agrees with Defendants.

a.     *Assistance*

On March 5, 2015, while confined in the SHU, Plaintiff was served copies of the February 10, 2013, inmate misbehavior reports. (Dkt. Nos. 153-2 at ¶ 13; 153-4 at 51.) Because Plaintiff was confined in the SHU, he was entitled to assistance. *See Murray*, 2014 WL 4676569, at *19 (citation omitted). An inmate's right to assistance is limited, however, and an inmate has no right to full counsel. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). The assistant need only perform what the plaintiff would have done but need not go beyond. *Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 3785771, at *10 (N.D.N.Y. Aug. 5, 2010). Significantly, any claim of depravation of assistance is reviewed for harmless error. *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009).

At Plaintiff's request, Scroggy was assigned to assist Plaintiff. (Dkt. No. 153-2 at ¶¶ 13-14.) On March 13, 2013, Plaintiff gave Scroggy an itemized list of the documents needed "to marshal the alleged facts and witnesses [he] needed interviewed." (Dkt. No. 153-2 at ¶ 14.) Specifically, Plaintiff requested Parts A, B, C, D, and E of the use of force report, the preliminary and final unusual incident reports, and all "to-and-from" memoranda regarding the

alleged incident. *Id*. Plaintiff also requested that Burnelle be interviewed. *Id*. Plaintiff provided Scroggy with a list of questions to ask Burnelle during the interview. *Id*.

Scroggy provided Plaintiff with copies of the available documents, and advised Plaintiff to request the other documents from the hearing officer at the disciplinary hearing. (Dkt. No. 163-13 at ¶¶ 56, 57.) Scroggy did not interview Burnelle. (Dkt. No. 153-1 at ¶ 8.) Scroggy explained to Plaintiff that he would not interview a staff member. (Dkt. No. 153-1 at ¶ 8.) Burnelle was willing, however, to answer the questions at the disciplinary hearing. (Dkt. No. 163-9 at 34.)

On March 14, 2013, Plaintiff's Tier III hearing commenced; Birrell served as the hearing officer. (Dkt. No. 163-11 at 6.) At the start of the hearing, Plaintiff informed Birrell that Scroggy failed to provide all of the documents he had requested, specifically, the "UI and section B, C, D, and E of the Use of Force." *Id*. at 6, 9. Thereafter, Birrell read the three inmate misbehavior reports into the record, and Plaintiff pleaded not guilty to all charges. *Id*. at 7-8. Birrell also read the use of force report into the record, as well as the unusual incident report. *Id*. at 9-11, 13-14. Birrell provided Plaintiff with copies of available documents, and explained to Plaintiff how he could obtain copies of certain documents once they were finalized. *Id*. 9-10, 13-15.

Even assuming Scroggy's assistance was inadequate, no reasonable factfinder could conclude that the deprivation resulted in any prejudice to Plaintiff because Birrell provided Plaintiff with copies of all available documents, and Plaintiff did not request to question Burnelle during the hearing. *See Murray*, 2014 WL 4676569, at *19 (the record established that the hearing officer took steps to provide the inmate with the requested evidence); *Lewis v. Murphy*, 2014 WL 3729362, at *13 (the plaintiff alleged that his counselor failed to interview witnesses

but did not show how this shortcoming prejudiced the results); *Pilgrim* 571 F.3d at 206

(depravation of assistance is reviewed for harmless error).

Based on the foregoing, the Court finds Plaintiff did not suffer from any constitutional

violations as a result of Scroggy's lack of assistance, if any.

b.    *Opportunity to be Heard and Present Witnesses*

An accused prisoner has the right to a hearing where he is given a reasonable opportunity

to call witnesses and present documentary evidence. *Sira*, 380 F.3d at 69. Although due process

includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell*, 387 F. Supp. 2d

227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). This right may be

limited for security reasons, to keep a hearing within reasonable limits, or on the basis of

irrelevance or lack of necessity. *Id.* (citing, *inter alia*, *Kingsley v. Bureau of Prisons*, 937 F.2d

26, 30 (2d Cir. 1991) (a hearing officer does not violate due process by excluding irrelevant or

unnecessary testimony or evidence)); *see also Eleby v. Selsky*, 682 F. Supp. 2d 289, 291-92

(W.D.N.Y. 2010) (hearing officers have discretion to keep the hearing within reasonable limits,

and "included within that discretion is the authority to refuse to call witnesses whose testimony

the prison official reasonably regards as duplicative or non-probative").

In this case, Plaintiff requested the testimony of inmates T. Moore, E. Lopez, and J.

Holloway. (*See* Dkt. No. 163-11 at 11, 16-17; Dkt. No. 153-2 at ¶¶ 18-19.) After permitting

Plaintiff to call and question inmate Moore, Birrell adjourned the hearing to locate inmate Lopez.

(Dkt. No. 119 at 28-29; Dkt. No. 163-11 at 17.) Thereafter, Birrell informed Plaintiff that inmate

Lopez was housed at Marcy Correctional Facility ("Marcy"). (Dkt. No. 163-11 at 17.) Birrell

stated that he had contacted staff at Marcy to determine if inmate Lopez would testify, and

inmate Lopez declined to testify, stating that had not been present at Great Meadow on February

25

10, 2013.  *Id*.  Inmate Lopez's refusal was documented and faxed to Great Meadow, and the form was included in Plaintiff's "hearing packet."  *Id*.

Plaintiff states that off the record, he "expressed" to defendant Birrell "the bizarre and suspicious nature of the alleged witness refusal and requested that [Birrell] make a personal inquiry into the alleged witness refusal by inmate Lopez by interviewing inmate Lopez."  (Dkt. 153-2 at ¶ 29.)  According to Plaintiff, Birrell refused, stating "I don't think staff will lie."  *Id*.

As the Second Circuit has explained, "[c]learly, if a witness will not testify if called, it cannot be a 'necessity' to call him.  [Therefore,] if a prison official . . . reasonably concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights."  *Silva*, 992 F.2d at 22.  Courts have consistently held that a prison hearing officer's failure to call a fellow inmate who refuses to testify does not violate due process.  *See Abdur-Raheem v. Caffery*, No. 13-CV-6315 (JPO), 2015 WL 667528, at *6 (S.D.N.Y. Feb. 17, 2015) (collecting cases, and finding the hearing officer did not violate inmate's due process rights when he proceeded without the testimony of a proposed witness, where that witness had indicated, by way of an inmate refusal form, that he would not testify).

On summary judgment, however, Plaintiff claims that he "later discovered that correction officials at Marcy Correctional Facility . . . threaten [sic] to physically harm inmate Lopez if he testified on [Plaintiff's] behalf."  (Dkt. No. 153-2 at ¶ 20.)  In support of his motion, Plaintiff has provided an unsigned and undated "Affidavit of Edgardo L. Lopez."  (Dkt. No. 153-4 at 48.)

However, as Defendants correctly pointed out in their memorandum of law, even if this affidavit were admissible, by Plaintiff's own admission this information was not available to Birrell at the time of the disciplinary hearing.  (Dkt. No. 163-1 at 24.)  Indeed, "a failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the

refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile." *Johnson v. Doling*, No. 9:05-CV-376 (TJM/RFT), 2007 WL 3046701, at *7 (N.D.N.Y. Oct. 17, 2007) (citing *Silva*, 992 F.2d at 22 and *Rossi v. Goord*, 2006 WL 2811505, at *14 (N.D.N.Y. Sept. 28, 2006)); *see also Sowell v. Bullis*, No. 9:13-CV-1482 (GLS/DJS), 2016 WL 1696454, at *8 (N.D.N.Y. Mar. 25, 2016).

Thereafter, Plaintiff advised Birrell that he no longer wished to call inmate Holloway. (Dkt. No. 163-11 at 17; *see also* Dkt. No. 163-5 at 71.)

Based on the foregoing, the Court finds Birrell's decision to proceed without the testimony of inmates Lopez and Holloway was justifiably based upon a reasonable conclusion of futility.

    c.  *Fair and Impartial Hearing and "Some Evidence"*

An inmate subject is entitled to an impartial hearing officer who does not prejudge the evidence. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir. 1990). But "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id*. at 259 (citing *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994) and *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). Further, prison officials "enjoy a rebuttable presumption that they are unbiased." *See Rodriguez v. Selsky*, No. 9:07-CV-0432 (LEK/DEP), 2011 WL 1086001, at *11 (N.D.N.Y. Jan. 25, 2011) (citation omitted). "A hearing officer may satisfy the standard of impartiality if there is some evidence in the record to support the findings of the hearing." *Fernandez v. Callens*, No. 06-CV-0506(Sr), 2010 WL 4320362, at *12 (W.D.N.Y. Oct. 29, 2010) (internal quotation marks and citation omitted). Moreover, "[a]n inmate's own subjective belief that the hearing officer was

biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez*, No. 9:09

CV-626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 12, 2011) (citing *Francis*, 891

F.2d at 46).

Here, there is no evidence in the record, aside from Plaintiff's conclusory allegation, that

Birrell failed to conduct the hearing in a fair and impartial manner.  (*See* Dkt. No. 153-3 at 20.)

The record evidence demonstrates that prior to issuing his determination, Birrell read a copy of

the misbehavior reports into the record and asked Plaintiff if he understood the charges, provided

Plaintiff with copies of all available documents and explained how Plaintiff could obtain copies

of the unavailable documents, and adjourned the hearing to afford Plaintiff additional time to

review the materials and prepare a defense.  (*See* Dkt. No. 153-2 at ¶ 16; Dkt. No. 163-11 at 6-

18; Dkt. No. 163-5 at 64-69.)

Additionally, the record evidence demonstrates that Birrell's determination of guilt was

supported by "some evidence" as required in *Hill*, 472 U.S. at 455, and "reliable evidence"

pursuant to *Luna*, 356 F. 3d at 488.  As reflected in the hearing transcript and disposition sheet,

Birrell relied upon the combination of the inmate misbehavior reports, investigation reports,

mental health testimony, use of force report, and Plaintiff's testimony.  (Dkt. No. 163-9 at 6.)

Plaintiff argues, however, that inmate Moore's testimony demonstrated that Plaintiff was

physically attacked by corrections officers, and therefore "contravened the alleged facts in both

the inmate misbehavior reports and the use of force report" which reported Plaintiff as the

attacker.  (Dkt. No. 153-3 at 20-21.)  Although Plaintiff's statement of the record is accurate,

judicial review of the "some evidence" standard is "narrowly focused."  *Sira*, 380 F.3d at 76.

"Ascertaining whether this standard is satisfied does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing the evidence.  Instead, the

relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." *Hill*, 472 U.S. at 455-56 (citations omitted).

Based on the above, the Court finds no genuine issues of material fact concerning Birrell's impartiality. Further, Birrell's decision was supported by "some evidence" sufficient for due process. *See Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted) ("some evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his first hand observation and detailed account of the incident); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same). Accordingly, the Court finds Plaintiff was afforded the minimum requirements of due process during the first disciplinary hearing.

> d.    *Appeal*

Plaintiff claims Prack violated his due process rights by failing to remedy the alleged constitutional violations stemming from the first disciplinary hearing. (Dkt. No. 119 at ¶ 30.) Specifically, Plaintiff alleges that on May 28, 2013, Prack "proactively participated in reviewing Plaintiff's administrative appeal" when he failed to remedy the unconstitutional conduct of Scroggy and Birrell. *Id.*; *see also* Dkt. No. 180-1 at 28-29. However, for the reasons set forth above, Plaintiff's was afforded the minimum requirements of due process. As such, Plaintiff cannot establish a Fourteenth Amendment due process claim against Prack based on the affirmance of a constitutional disciplinary hearing. *See, e.g.*, *Lopez v. Whitmore*, No. 13-CV-0952 (BKS/ATB), 2015 WL 4394604, at *11 (July 16, 2015) (dismissing due process claim against defendant Prack "[b]ecause his only involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that th[e] court . . . found comported with due process"); *Cole v.*

*New York State DOCCS*, No. 9:14-CV-0539 (BKS/DEP), 2016 WL 5394752, at *28 (N.D.N.Y. Aug. 25, 2016).

Accordingly, the Court recommends granting Defendants' cross-motion for summary judgment on this claim.

### 4.    Second Disciplinary Hearing

Plaintiff's Tier III disciplinary hearing, pertaining to the charges stemming from the February 20, 2013, incident, also commenced March 14, 2013.  (Dkt. No. 163-10 at 2.)  Plaintiff was charged with violent conduct, assault on staff, refusing a direct order, and a movement regulation violation.  *Id*. at 6.  Birrell served as the hearing officer.  *Id*. at 2.  Plaintiff pleaded "not guilty" to all charges.  *Id*. at 3.  On March 22, 2013, Plaintiff was found guilty of all charges, and sentenced to eighteen months of SHU confinement, with a corresponding loss of package, commissary, and phone privileges.  *Id*.

Plaintiff claims he was denied adequate pre-hearing assistance, notice of the charges, and a fair and impartial hearing supported by reliable evidence.  (Dkt. No. 119 at ¶¶ 23-37; Dkt. No. 153-2 at ¶¶ 13-31.)  Defendants argue Plaintiff was afforded the minimum requirements of due process.  (Dkt. No. 163-1 at 19-27.)  The Court agrees with Defendants.

#### a.    Assistance

As set forth above, because Plaintiff was confined to the SHU when he was served with copies of the February 20, 2013, misbehavior reports, Plaintiff was entitled to pre-hearing assistance.  *See Murray v. Arquitt*, 2014 WL 4676569, at *19.  At Plaintiff's request, DeLuccia was assigned to assist Plaintiff in preparation for the second disciplinary hearing.  (Dkt. No. 153-2 at ¶¶ 24-25; Dkt. No.163-10 at 25.)  DeLuccia met with Plaintiff on March 5, 2013, and on March 11, 2013.  During those meetings, Plaintiff requested copies of the Use of Force

Report (Parts A, B, C, D, and, E), the preliminary and final unusual incident report, and all to-and-from memoranda.  (Dkt. No. 153-2 at ¶ 25.)  According to Plaintiff, DeLuccia advised that she "would not do anything for" Plaintiff, and told Plaintiff to "ask the hearing officer during the hearing."  *Id*.  At his deposition, Plaintiff testified that "[DeLuccia] didn't do a damn thing." (Dkt. No. 163-5 at 83.)

Here, even assuming DeLuccia's assistance was inadequate, no reasonable factfinder could find that the deprivation resulted in any prejudice to Plaintiff.  *See Clark*, 590 F. Supp. 2d at 429 (inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing).  Indeed, Plaintiff testified that Birrell provided all of the documentation that Plaintiff had requested, and adjourned the hearing to afford Plaintiff time to review the documents and prepare his defense.  *Id*. at 84.

Here, there is no evidence that Plaintiff was unable to present a defense or that the result of Plaintiff's hearing would have been any different had DeLuccia supplied Plaintiff with the requested documents.  *See e.g.*, *Murray*, 2014 WL 4676569, at *19 (the record established that the hearing officer took steps to provide the inmate with the requested evidence).  Based on the foregoing, Plaintiff did not suffer from any constitutional violations as a result of DeLuccia's lack of assistance.

> b.    *Advance Notice of Charges*

An accused prisoner has the right to be provided with advanced written notice of the charges brought against him.  *Sira*, 380 F.3d at 69.  "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report."

*Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 940 n.11 (2d Cir. 1977)) (alteration in original).

On March 5, 2013, Plaintiff was served with copies of the two February 20, 2013, inmate misbehavior reports. (Dkt. No. 163-10 at 3.) The misbehavior reports specified the rules that Plaintiff was alleged to have violated. *Id*. at 6-7. Specifically, "T. Johnston" charged Plaintiff with violent conduct, assault on staff, refusing a direct order, and a movement regulation violation. *Id*. at 7. The explanation in the misbehavior report was quite clear that Plaintiff attempted to assault Johnston on February 20, 2013, at approximately 10:15 a.m., while Johnston was attempting to escort Plaintiff to his doctor's call out. *Id*. Johnston alleged that while attempting to lock Plaintiff in his cell after he refused his medical call, Plaintiff ignored several direct orders and he "lunged forward attempting to strike me with his head." *Id*. Johnston claims physical force was necessary to control Plaintiff. *Id*. Thereafter, at approximately 10:25 a.m., Turner attempted to escort Plaintiff to a post-use-of-force medical examination. *Id*. at 6. Plaintiff "head butted" Turner in the forehead. *Id*. Turner charged Plaintiff with assault. *Id*. at 6.

Plaintiff's second disciplinary hearing also commenced on March 14, 2013. (Dkt. No. 163-10.) Plaintiff alleges, however, that he was summoned to appear before Birrell for alleged violations of rules reported by "T. Johnson" instead of "T. Johnston." (Dkt. No. 119 at ¶ 34; Dkt. No. 163-5 at 86.) As such, Plaintiff claims he never received advance notice of the charges issued by "T. Johnson." (Dkt. No. 119 at ¶ 36.)

However, as reflected in the transcript of the hearing, Birrell referred to the charges issued by "Johnston" not "Johnson." (Dkt. No. 163-11 at 4.) In any event, Plaintiff testified that

the charges issued by "T. Johnston" in the February 20, 2013, misbehavior report were the same as those read by Birrell during the second disciplinary hearing.  (Dkt. No. 163-5 at 88.)

Accordingly, the Court finds Plaintiff was provided with "advance notice of the charges" as required for procedural due process.

### c.    Fair and Impartial Hearing Officer and Some Evidence

Plaintiff claims he was deprived of the right to a fair and impartial hearing officer.  (Dkt. No. 119 at ¶ 34.)  As discussed above, prison officials enjoy a rebuttable presumption that they are unbiased and "in order to defeat a motion for summary judgment, a plaintiff-inmate must 'be armed with [something] more than conclusory allegations of bias and prejudgment' of the disciplinary hearing officer."  *Bunting v. Nagy*, 452 F. Supp. 2d 447, 460-61 (S.D.N.Y. 2006) (quoting *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989)); *Rodgriguez v. Selsky*, 2011 WL 1086001, at *11.  Here, Plaintiff's claim of bias is entirely conclusory.  Further, as was the case with the first disciplinary hearing, the record evidence demonstrates that prior to issuing his determination, Birrell read the misbehavior reports into the record, provided Plaintiff with copies of documents that he had previously requested, and adjourned the hearing to allow Plaintiff time to review the documents and prepare his defense.  (Dkt. No. 163-5 at 84.)

In any event, a hearing officer satisfies the standard of impartiality "if there is some evidence in the record to support the findings of the hearing."  *Fernandez v. Callens*, No. 06-CV-0506(Sr), 2010 WL 4320362, at *12 (W.D.N.Y. Oct. 29, 2010) (internal quotation marks and citation omitted).  As discussed below, Birrell's decision was supported by "some evidence."

The crux of Plaintiff's "some evidence" claim rests on a typographical error.  (*See* Dkt. No. 119 at ¶ 34.)  Specifically, Plaintiff claims that because the hearing record sheet and disposition sheet recorded that "T. Johnson" as opposed to "T. Johnston" charged Plaintiff with

violent conduct, assault on staff, refusing a direct order, and a movement regulation violation on February 20, 2013, Birrell's disposition was not based on "some evidence." (Dkt. No. 153-4 at 21-22; Dkt. No. 163-10 at 2-3.) Defendants argue that a minor typographical error does not obviate the otherwise ample support in the record for Birrell's determination. (Dkt. No. 163-1 at 26.) The Court agrees with Defendants.

The hearing disposition sheet indicates Birrell relied upon the combination of the misbehavior reports, the unusual incident report, mental health testimony, and use of force report. (Dkt. No. 163-10 at 4.) The misbehavior report issued by Johnston claimed, *inter alia*, Plaintiff ignored several direct orders and "suddenly lunged forward attempting to strike me with his head." *Id*. Similarly, the use of force memorandum, dated February 20, 2013, from "T. Johnston" to Superintendent Racette, advised that Johnston used force to restrain Plaintiff after Plaintiff "lunged forward" attempting to strike Johnston with his head. *Id*. at 13. The preliminary unusual incident report indicates that on February 20, 2013, "Officers T. Johnston and J. Kitchner then attempted to return [Plaintiff] to his cell and remove the restraint equipment and [Plaintiff] attempted to headbutt Officer Johnston." *Id*. at 30. Likewise, Part A of the use of force report indicates the following staff were involved in the February 20, 2013, incident: "T. Johnston, J. Kitchner, E. Turner, T. Smith, and M. Gilles." *Id*. at 28. An internal memorandum, dated February 20, 2013, from Sergeant Lowery, the supervisor on duty, to Lieutenant Smith, detailing the use of force and usual incident occurring on February 20, 2013, also refers to "Johnston." *Id*. at 10. Thus, the Court finds Birrell's determination was based on "some evidence."

Based on the foregoing, the Court finds Plaintiff was afforded the minimum requirements of due process during the second disciplinary hearing.

*d.    Appeal*

Plaintiff claims that Prack violated his due process rights by failing to remedy the alleged constitutional violations stemming from the second disciplinary hearing.  (Dkt. No. 119 at ¶ 37.) Specifically, Plaintiff alleges that on May 28, 2013, Prack "proactively participated in reviewing Plaintiff's administrative appeal" when he failed to remedy the unconstitutional conduct of DeLuccia and Birrell.  *Id.*  However, as discussed above, a supervisor cannot be liable for affirming a constitutional disciplinary hearing.  *See Lopez v. Whitmore*, 2015 WL 4394604, at *11.

Therefore, the Court recommends granting Defendants' cross-motion for summary judgment on this claim.

**C.    Uhler**

Plaintiff alleges that while housed at Upstate, Uhler placed him on an "indefinite restraint order" from April 22, 2013, through May 19, 2014, in violation of his right "to be free from unlawful restraint and due process pursuant to the Eighth and Fourteenth Amendments."  (Dkt. No. 119 at ¶¶ 18-20.)  Plaintiff moves for summary judgment on the Fourteenth Amendment due process claim.  (Dkt. No. 153-3 at 11-14.)  Defendants cross-move for summary judgment on the Fourteenth Amendment due process claim, as well as the Eighth Amendment conditions of confinement claim.  (Dkt. No. 163-1 at 9-13.)  In his opposition to Defendants' cross-motion, Plaintiff requests to withdraw the Eighth Amendment claim, and proceed only on the due process claim.  (Dkt. No. 180-1 at 13.)

**1.    Fourteenth Amendment**

As discussed above, to prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest, and that he was deprived of

that interest without being afforded sufficient procedural safeguards.  *See Tellier*, 280 F.3d at 79-80; *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).  Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest.  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).  An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. at 484.  The Second Circuit has refused to set a bright line rule on when confinement becomes atypical.  Instead, "in order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which [their] conclusions [are] based."  *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted).

Here, the restraint order required Plaintiff to be "secured with full restraints, to include a waist chain and black box during all movement out of his cell."  (Dkt. No. 163-6 at 15.)  Plaintiff argues the "indefinite restraint orders" violated his due process rights because he was not afforded a seven day review and renewal as required by 7 N.Y.C.R.R. § 305.4(b).  (Dkt. No. 153-1 at 13.)  However, "inmates do not have a liberty interest in being free from restraints while out of [their] cell."  *Walker v. LaValley*, No. 9:12-CV-807 (TJM/CFH), 2014 WL 4744735, at *19 (N.D.N.Y. Sept. 23, 2014); *Walker v. Fisher*, No. 9:08-CV-1078 (TJM/ATB), 2011 WL 4369116, at *15 (N.D.N.Y. July 25, 2011), *aff'd*, 523 F. App'x 43, 44 (2d Cir. 2013) (same).  Indeed, "[p]lacing a prison inmate in restraints does not impose the 'atypical and significant hardship' envisioned in *Sandin*."  *Walker v. Fischer*, 2011 WL 4369116, at *15 (citing *Brown v. Coughlin*, No. 93-CV-0633E(H), 1995 WL 643349, at *3 (W.D.N.Y. Oct. 13, 1995) (holding SHU inmate "does not have a liberty interest in being unencumbered by mechanical restraints")).

36

Moreover, as a SHU facility, all inmates housed at Upstate are required to wear mechanical restraints when outside of their cell.  (Dkt. No. 163-13 at ¶ 24.)  Mechanical restraints include handcuffs and a waist chain.  *Id*. at ¶ 25.  As such, Plaintiff's due process claim fails as a matter of law as Plaintiff had no liberty interest that would trigger due process protections.

Further, to the extent Plaintiff argues that the restraints violated a DOCCS directive or policy, "a violation of prison regulations does not amount to a constitutional violation and is not a valid basis for relief in an action pursuant to 42 U.S.C. § 1983."  *Davis v. Rynkewicz*, No. 11-CV-431(Sr), 2015 WL 1038098, at *18 (W.D.N.Y. Mar. 10, 2015) (citing *Cico v. Kourofsky*, No. 9:08-CV-491 (GLS/RFT), 2010 WL 5138549, at *4 (N.D.N.Y. Feb. 18, 2010) and *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997) ("A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements.")).  In any event, CORC determined during the grievance process that Plaintiff "was not on a restraint order," and therefore, would not have been subject to the seven day renewal as required by 7 N.Y.C.R.R. § 305.4(b).  (*See* Dkt. No. 163-6 at 1.)  Based on the foregoing, the Court recommends granting summary judgment to Uhler on this claim.

### 2.    Eighth Amendment

The Eighth Amendment protects prison inmates from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. at 297; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  As set forth above, the test for a 1983 claim is twofold.  First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  *Farmer*, 511 U.S. at 834.  Second, the prisoner must show that

the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id*.

While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer*, 511 U.S. at 832. "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) ("only those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted)). Mere discomfort that does not pose a serious risk to health or safety will not satisfy this standard. *See Trammel v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003).

Plaintiff's Eighth Amendment conditions of confinement claim against Uhler arises out of the "indefinite restraint order," directing Plaintiff to be secured in "full restraints, to include a waist chain and black box during all movement out of his cell." (Dkt. No. 163-6 at 15.) Accordingly, to prevail on this claim, Plaintiff must establish that Uhler was deliberately indifferent to a substantial harm. *See Farmer*, 511 U.S. at 834. However, under the deliberate indifference standard, "[t]he imposition of a restraint order only violates Eighth Amendment protections if imposed restraint is 'totally without penological justification, grossly disproportionate, or involves the unnecessary and wanton infliction of pain.'" *Walker v. LaValley*, 2014 WL 47447835, at *16 (quoting *Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998)). "This is because prison officials are granted wide latitude to place restraints on inmates." *Id*.

38

Here, the record evidence demonstrates Plaintiff was placed on "full restraints" due to his "extreme disciplinary history" and "ability to easily slip out of mechanical restraints." (Dkt. No. 163-6 at 17, 15.) In his opposition, Plaintiff does not address the merits, and instead, requests to withdraw his Eighth Amendment claim against Uhler. (Dkt. No. 180-1 at 13.[8]) Because Plaintiff moves to withdraw this claim so late in the litigation, and only after Defendants have cross-moved for summary judgment, the Court recommends dismissing Plaintiff's Eighth Amendment claim against Uhler with prejudice.

In any event, because Plaintiff has not raised any issue of material fact that would permit a reasonable juror to conclude that Uhler acted totally without any penological justification, the restraints were grossly disproportionate, or the restraints involved the unnecessary infliction of pain, the Court recommends granting summary judgment to Uhler on the merits of this claim.

### D.    Qualified Immunity

Inasmuch as the Court is recommending that Defendants' cross-motion for partial summary judgment be granted in its entirety, the Court finds it unnecessary to reach Defendants' qualified immunity argument.

## V.    CONCLUSION

Based on the findings above, it is recommended that Plaintiff's motion for partial summary judgment (Dkt. No. 153) be denied and Defendants' cross-motion for partial summary judgment (Dkt. No. 163) be granted. Thus, it is also recommended that Tabb, Knapp-David,

---

[8] Plaintiff has not specified, however, whether he wishes to withdraw this claim with or without prejudice, nor has Plaintiff explained the reasons for this request. (Dkt. No. 180-1 at 13.) In light of the procedural posture of this action, Plaintiff has no right to a voluntary dismissal without prejudice of this claim. *See* Fed. R. Civ. P. 41(a)(1) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."); *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990), *cert. denied*, 498 U.S. 899 (1990).

Fonda, Scroggy, DeLuccia, Birrell, Prack, and Uhler be dismissed from this action.  If the

District Court accepts this Report and Recommendation, only Plaintiff's Eighth Amendment

excessive force and failure to intervene claims against Rosati, Maguire, Burnelle, LaRose,

DeLong, Shattuck, McNally, Johnston, Lowry, and Kitchner will remain for trial.

     **WHEREFORE**, it is hereby

     **RECOMMENDED** that Plaintiff's motion for partial summary judgment (Dkt. No. 153)

be **DENIED**; and it is further

     **RECOMMENDED** that Defendants' cross-motion for partial summary judgment (Dkt.

No. 163) be **GRANTED**; and it is further

     **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the

Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**<u>PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

---

[9] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Dated:  March 10, 2017
   Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge